# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

WESTERN SECTION
CIVIL ACTION
NO.

**05 - 30171 - KPN**

| | |
|---|---|
| *PAUL D. MASTALERZ,*      **Plaintiff** | ) |
| | ) |
| **v.** | ) |
| | ) |
| *METHODS MACHINE TOOLS, INC.,* a Corporation duly established under the laws of the Commonwealth of Massachusetts, | ) ) ) |
| | ) |
| *SCOTT McIVER*, Individually & in his Official Capacity as the Principal Owner of Methods Machine Tools, Inc., | ) ) ) |
| | ) |
| *BRYON G. DEYSHER*, Individually & in his Official Capacity as President & Chief Executive Officer of Methods Machine Tools, Inc., | ) ) ) ) |
| | ) |
| *STEVEN BOND*, Individually & in his Official Capacity as National Sales Manager of Methods Machine Tools, Inc., *and* | ) ) ) |
| | ) |
| *CAROL COLAIANNI*, Individually & in her Official Capacity as Chief Financial Officer of Methods Machine Tools, Inc.,      **Defendants** | ) ) ) ) |

RECEIPT # 306003
AMOUNT $ 250.00
SUMMONS ISS. ✓
LOCAL RULE 4.1
WAIVER OF SERV.
MCF ISSUED
AO 120 OR 121
BY DPTY CLK MGv
DATE 7/25/05

## COMPLAINT AND DEMAND FOR A JURY TRIAL

## I.    JURISDICTION

1.    This is an action under Title VII -- 42 U.S.C. § 2000e-3 & 42 U.S.C. § 704(a). The plaintiff further invokes the pendent jurisdiction of this Court to consider the claims arising under state law, M.G.L. Chapter 151B § 4(4), M.G.L. Chapter 12 §§ 11 H & I, as well as the common law claim of defamation. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1367.

2.    There exists between the parties an actual controversy justiciable in nature.

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.    On or about January 26, 2005, the plaintiff, Paul D. Mastalerz, filed a Complaint at both the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission (hereinafter referred to as the "MCAD" and "EEOC", respectively), charging that defendant Methods Machine Tools Inc. subjected him to unequal terms and conditions of employment and subsequently terminated him because he opposed and complained of the defendants' unlawful and discriminatory employment practices, and because the plaintiff advocated on behalf of a female employee who had been subject to discriminatory treatment and sexual harassment by defendant Methods Machine Tools Inc.'s employees and supervisory officials in violation of M.G.L. Chapter 151B § 4(1) & (4) & Title VII -- 42 U.S.C.§ 2000e-3.

4.    On or about May 5, 2005, the MCAD and EEOC issued a right to sue notice at the plaintiff's request.

## III.  PARTIES

5.  The plaintiff, PAUL D. MASTALERZ, was at all times relevant to the allegations of this Complaint the National Service Manager employed by Methods Machine Tools, Inc., and a resident of Hampshire County, in the Commonwealth of Massachusetts.

6.  The defendant, METHODS MACHINE TOOLS, INC., was at all times relevant to the allegations of this Complaint a Corporation duly established under the laws of the Commonwealth of Massachusetts, with a corporate headquarters located in Sudbury, Middlesex County, in the Commonwealth of Massachusetts.

7.  The defendant, SCOTT McIVER, was at all times relevant to the allegations of this Complaint the Principal Owner of defendant, METHODS MACHINE TOOLS, INC..

8.  The defendant, BRYON G. DEYSHER, was at all times relevant to the allegations of this Complaint the President & Chief Executive Officer of defendant METHODS MACHINE TOOLS, INC..

9.  The defendant, STEVEN BOND, was at all times relevant to the allegations of this Complaint the National Sales Manager of defendant METHODS MACHINE TOOLS, INC..

10. The defendant, CAROL COLAIANNI, was at all times relevant to the allegations of this Complaint the Chief Financial Officer of defendant METHODS MACHINE TOOLS, INC..

## IV.    STATEMENT OF FACTS

**Background:**

11.    Plaintiff Paul D. Mastalerz was hired in June 1996 as a Field Service Engineer by defendant Methods Machine Tools, Inc. [hereinafter "Methods"], with a starting salary of $27,000.00.

12.    In 1998, plaintiff Mastalerz was promoted to the position of Assistant Service Manager and provided a salary increase to $32,000.00.

13.    Due to his exemplary level of quality work and dedication to Methods, in May 2000, plaintiff Mastalerz was promoted to the position of National Service Manager and provided a substantial salary increase to $62,000.00 commensurate with this leadership position, despite the fact that he was not the most senior person qualified for the position.

14.    During a meeting at the time of the promotion with defendant Bryon G. Deysher, President & Chief Executive Officer of Methods, President/CEO Deysher informed plaintiff Mastalerz that the Service Department was not doing well financially; in fact, defendant President/CEO Deysher stated that it was running in the negative. Plaintiff Mastalerz advised defendant President/CEO Deysher that he had new ideas and new visions, and that he would succeed in turning the department around. In a full-scale effort, plaintiff Mastalerz dedicated himself to reorganizing the department and increasing its efficiency. Toward this end, he worked weekends, nights and spent weeks at a time away from his family and his home. As a direct result of his hard work and

dedication to Methods, plaintiff Mastalerz turned the Service Department around and within two years it showed a profit.

15. During his tenure as the National Service Manager, plaintiff Mastalerz received yearly salary increases up through his termination date on December 3, 2004, at which time his yearly salary was $72,000.00, in addition to a car allowance of $550.00 per month, and other substantial benefits.

16. Throughout the course of his employment, plaintiff Mastalerz performed with distinction, at all times demonstrating outstanding attention to his duties.

17. During his tenure as National Service Manager, plaintiff Mastalerz turned the Service Department into a profitable asset for Methods, and only received merit accolades, commendations and praise for his management skills and abilities to lead the department.

18. **Most recently, plaintiff Mastalerz was publicly commended by both Methods' Principal Owner, defendant Scott McIver, and his immediate supervisor, National Sales Manager, defendant Steven Bond, for his overall success and superior job performance during a Recognition Dinner held on September 9, 2004 at the Prudential Building in Chicago.**

19. Despite plaintiff Mastalerz's commitment, loyalty, professionalism, devotion to Methods, and his celebrated success in his position as National Service Manager, Methods demoted plaintiff Mastalerz and ultimately terminated him because he opposed Methods' unlawful and discriminatory employment practices, because he refused to continue to participate in the unlawful and discriminatory practices, and because he advocated on behalf of a female Service Engineer who had been subject to

discriminatory treatment and sexual harassment by Methods' employees and supervisory officials.

20. As the plaintiff was fully aware, Methods had in place discriminatory hiring and employment policies and practices, to which plaintiff Mastalerz had voiced his strong opposition on a number of occasions to both his immediate supervisor and other supervisory officials at Methods.

21. Plaintiff Mastalerz's statements in opposition to Methods' discriminatory employment practices are protected pursuant to state and federal law.

22. As a result of his statements in opposition to Methods' discriminatory employment practices, plaintiff Mastalerz suffered unlawful retaliation.

23. The defendants' retaliatory actions and conduct against plaintiff Mastalerz constitute the requisite "intimidation, threats or coercion" protected under the Massachusetts Civil Rights Act -- M.G.L. Chapter 12 § 11I.

**Background Summary of Methods' Unlawful & Discriminatory Employment Practices:**

24. In June 2002, Methods' Vice President Bill Ankrem instructed the plaintiff to "get rid of Arnold Christansen", Methods' only West Coast Service Engineer, for the stated reason that he had a speech impediment. Plaintiff Mastalerz protested the unlawful termination because Christansen was an excellent Service Engineer, was doing an outstanding job, and because his speech impediment in no way interfered with his job performance. Despite plaintiff Mastalerz's protests, former National Sales Manager Charlie Quillen directed plaintiff Mastalerz to layoff Christansen because of his speech

impediment, leaving the entire West Coast open with no Service Engineer in place. Plaintiff Mastalerz was also directed to advise Christansen that the reason for the layoff was that business was too slow to warrant a West Coast Service Engineer. Despite the pretextual reason for the layoff, Methods immediately began running an ad for a West Coast Service Engineer in Monster.com, and by September 2002 had hired a new West Coast Service Engineer.

25.    In July 2002, plaintiff Mastalerz was in the process of hiring a Service Engineer to fill a position in the Service Department in the Chicago area. During the hiring process, plaintiff Mastalerz interviewed Leon Mayes, a very highly qualified black man who had worked for many years for one of Methods' competitors in the Chicago area. After a telephone interview, plaintiff Mastalerz expressed his eagerness to his direct supervisor, former National Sales Manager Quillen, to fly Leon Mayes to Methods' corporate office for an interview. National Sales Manager Quillen asked that Midwest Regional Sales Manager  Greg Lafeldt, meet with Leon Mayes face to face, take him to lunch in order to talk with him about the position in advance of the interview. Plaintiff Mastalerz agreed and made the arrangements with Lafeldt. The following day, Lafeldt met with Leon Mayes, and reported back to plaintiff Mastalerz that "the meeting went exceptionally well, and that Leon Mayes was totally qualified for the position", but there was "one problem though -- he is as black as the ace of spades." Upon hearing this, plaintiff Mastalerz immediately voiced his strong objection to the discriminatory comment, and stated that the color of his skin does not matter and should not matter. Notwithstanding, Lafeldt urged plaintiff Mastalerz to run "the problem" by National Sales Manager Quillen. After completing the conversation, plaintiff Mastalerz

immediately went to National Sales Manager Quillen's office, and advised him that Lafeldt had a very successful interview with Leon Mayes and that he wanted to fly him in for an interview. National Sales Manager Quillen replied, "Fine, get it done." At this juncture, plaintiff Mastalerz pointed out Lafeldt's concern that Leon Mayes was black. Upon hearing this, National Sales Manager Quillen chuckled and instructed plaintiff Mastalerz to forget flying Leon Mayes in for an interview. Plaintiff Mastalerz questioned National Sales Manager Quillen's motivation. In response, National Sales Manager Quillen explained that it would not go over with Methods' Owner, and then directed plaintiff Mastalerz to "look elsewhere for another guy." Plaintiff Mastalerz voiced his very strong objection to the discriminatory hiring practices, and warned National Sales Manager Quillen that Methods "would be lucky if they were not caught for all this discrimination."

26.    During this same time period, National Sales Manager Quillen was heard making derogatory statements and discriminatory comments, such as " We have a nigger in a woodshed."

27.    During plaintiff Mastalerz's employment at Methods, former Owner Clem McIver [father of defendant Owner Scott McIver], publicly stated, "I will pay millions of dollars in fines before I will ever hire a black."

**Summary Of Unlawful & Discriminatory Employment Practices**
**That Led Up To The Retaliatory Treatment, Adverse Employment Actions,**
**& Termination:**

28.    On June 28, 2004, plaintiff Mastalerz hired the first female Service Engineer in the
history of Methods, Yajaira Perez.[1]  At this same time, plaintiff Mastalerz hired Cliff
Ansell as a Service Engineer. Both employees were equally skilled and qualified for the
position of Service Engineer.

29.    Subsequent to the hiring, plaintiff Mastalerz received constant criticism over the course
of the summer from his immediate supervisor, National Sales Manager, defendant
Steven Bond, and Methods' Owner, defendant Scott McIver, because Yajaira Perez
wore her hair in cornrows and because her pants were slightly baggy.

30.    In response to his supervisor's demands that Yajaira Perez not wear her hair in
cornrows, plaintiff Mastalerz pointed out that her hair was neatly tied back, and that
her hairstyle was cultural. Plaintiff Mastalerz also told defendant National Sales
Manager Bond, "It's discriminatory to go after her hair, it's cultural." Plaintiff
Mastalerz also pointed out that another male Service Engineer was allowed to have a
ponytail, without a problem. Notwithstanding, plaintiff Mastalerz was directed to

---

[1] In mid July 2004, Greg Lafeldt, Methods' Western Regional Sales Manager, asked plaintiff Mastalerz
if Yajaira Perez was a new secretary, after he had a conversation with her on the telephone. Plaintiff
Mastalerz informed Lafeldt that she was a new Service Engineer. Lafeldt responded by saying,
"Interesting -......breaking Methods' tradition?"  In turn, plaintiff Mastalerz replied, "It's a new era
and she was qualified."  Lafeldt responded by saying, "Hope so. She sounds nice."

instruct Yajaira Perez to change her hairstyle, which he did. Plaintiff Mastalerz was also directed by his supervisor to instruct Yajaira Perez not to wear baggy pants. In response, plaintiff Mastalerz pointed out that male Service Engineers wore baggier pants and were sloppier in their appearance than Yajaira Perez. For example, plaintiff Mastalerz reminded his supervisor that a male Service Engineer wore farmer jeans, baggy carpenter pants, and orange sneakers, and that other male Service Engineers wore their shirts untucked, wore shirts with beer logos, dressed sloppy, and had baggy pants, without a problem. Plaintiff Mastalerz also pointed out that Yajaira Perez was physically petite, and as a result her pants fit a bit loosely. Notwithstanding, plaintiff Mastalerz was directed to instruct Yajaira Perez to wear tighter fitting pants, which he did. Pursuant to the direct order of his supervisor and under threat of termination, plaintiff Mastalerz reprimanded Yajaira Perez.

31.    Other significant events leading up to plaintiff Mastalerz's claims began the week of September 7, 2004, when defendant National Sales Manager Bond informed the plaintiff that his newly hired female Service Engineer, Yajaira Perez, had filed sexual harassment claims against another Service Engineer, Jack Gabrenas with the Massachusetts Commission Against Discrimination[MCAD Docket No. 04BEM02468].

32.    After a brief discussion with defendant National Sales Manager Bond regarding the sexual harassment claims, plaintiff Mastalerz stated, "If it's true, we will have to fire Jack (Gabrenas)."

33.    Subsequently, defendant National Sales Manager Bond conducted an investigation during which Jack Gabrenas admitted that while training Yajaira Perez during a service call in Connecticut that he had suggested to Yajaira Perez that she apply for a job as a

stripper at a strip club that they passed while driving during a service call. In addition, while at Methods' corporate office, Jack Gabrenas admitted that he had nudged Yajaira Perez on the butt with his foot while she was bending over, and when she showed her disapproval of his conduct, he called her a "Bitch." Further, Yajaira Perez had alleged additional complaints regarding other incidences of discriminatory and/or sexually offensive/unwelcome conduct. Despite Jack Gabrenas' admitted conduct, defendant National Sales Manager Bond told plaintiff Mastalerz during a meeting that Yajaira Perez was a "gold-digger."

34.    During the discussion, plaintiff Mastalerz expressed his position and advocated that "I don't support anything that Jack (Gabrenas) did, he needs to be punished."

35.    Plaintiff Mastalerz further expressed that the appropriate disciplinary was that Jack (Gabrenas) be fired. Notwithstanding, defendant National Sales Manager Bond refused to fire him.

36.    Over the next several weeks, plaintiff Mastalerz was called into several meetings to discuss Yajaira Perez's sexual harassment case at the MCAD, as well as her future employment at Methods.

37.    During the first meeting held in a conference room in the Methods' Accounting Department at the end of September 2004, defendant President/CEO Deysher met with defendant National Sales Manager Bond, Methods' Chief Financial Officer, defendant Carol Colaianni, and plaintiff Mastalerz. Defendant President/CEO Deysher began the meeting by asking, "What is going on with this gal Yaji, or whatever her name is?" After a briefing by defendant Chief Financial Officer Colaianni, regarding the MCAD case and an agreement to defend Jack Gabrenas in the MCAD, defendant Chief

11

Financial Officer Colaianni advised defendant President/CEO Deysher that Yajaira Perez wanted Jack Gabrenas fired.

38. In response, defendant President/CEO Deysher replied, "Jack (Gabrenas) is not going anywhere! Jack has been with this company for too long. No gal is gonna come in here and be with Methods for a couple of months and make trouble."

39. Defendant Chief Financial Officer Colaianni then directed plaintiff Mastalerz to begin paper-trailing Yajaira Perez for purposes of a termination. Defendant President/CEO Deysher also directed plaintiff Mastalerz to send Yajaira Perez out on service calls with no backup, so that she would fail in her job duties and responsibilities, despite the fact that this was not the standard procedure -- to send a new engineer out on their first job without another, more experienced engineer for backup. During this meeting, defendant President/CEO Deysher specifically proclaimed, "We need to set this girl up for failure," and "make it miserable for her." Defendant National Sales Manager Bond then turned to plaintiff Mastalerz and reiterated the directive to set Yajaira Perez up for failure.

40. Under the explicit direction of defendant President/CEO Deysher, defendant National Sales Manager Bond, and defendant Methods' Owner Scott McIver, and under threat of termination, plaintiff Mastalerz prepared several documents paper-trailing Yajaira Perez. Many of the statements in the documents were not accurate and/or were taken out of context. Plaintiff Mastalerz complied with these directives out of fear, intimidation, and concern for the financial welfare of his family of five.

41. During this first meeting, plaintiff Mastalerz voiced his very serious concerns about sending Yajaira Perez out on her first installation, and warned that it was not a good

idea. In response, defendant National Sales Manager Bond again gave the explicit directive -- "Set her up for failure."

42.  Subsequent to the first meeting, plaintiff Mastalerz was specifically directed by defendant President/CEO Deysher to make life miserable for Yajaira Perez because of her sexual harassment lawsuit.

43.  During the third week of October 2004, plaintiff Mastalerz was called into a second meeting to discuss Yajaira Perez. This meeting took place in the same conference room in Methods' Accounting Department. The same Methods' officials were in attendance -- defendant President/CEO Deysher, defendant National Sales Manager Bond, and defendant Chief Financial Officer Colaianni, in addition to Methods' Owner, defendant McIver.

44.  At the outset of the meeting, defendant McIver walked into the meeting room, and glared in a hostile and intimidating manner at plaintiff Mastalerz until he sat down at the conference table. Defendant President/CEO Deysher then began the meeting by asking, "Where are we at with Yaji?" Defendant Chief Financial Officer Colaianni provided an update as to the status of Yajaira Perez's MCAD case, and then reported that the "service guys say they will not work with Yaji."

45.  Defendant President/CEO Deysher in turn stated, "We can't let this girl ruin the morale of the division." Defendant President/CEO Deysher also reported that he had met with Yajaira Perez and that she had made the request that Jack Gabrenas be moved to another department located in another building. After reporting this, defendant President/CEO Deysher stated, "That is surely not going to happen."

46.   Plaintiff Mastalerz was then questioned about his efforts in paper-trailing Yajaira Perez
so that she could be fired. At this point in the meeting, defendant President/CEO
Deysher looked directly at plaintiff Mastalerz and in a loud accusatory tone stated,
**"You screwed up! You can't be trusted anymore! I am very disappointed in you."**
**Defendant President/CEO Deysher then stated to plaintiff Mastalerz, "You made**
**the mistake of hiring a woman. There is a reason we call them servicemen!"**

47.   In response, plaintiff Mastalerz explained that he hired good people, and that Yajaira
Perez was equally good and as qualified as Cliff Ansell, the other Service Engineer who
was hired at the same time.

48.   **At this point, in a harsh voice defendant President/CEO Deysher loudly declared**
**that plaintiff Mastalerz cannot hire any more Service Engineers.**

49.   A discussion then ensued between defendant President/CEO Deysher and defendant
McIver regarding the Massachusetts Commission Against Discrimination, during which
**defendant President/CEO Deysher stated, "That is all we need -- to have MCAD**
**sniffing around here. Once they are in here, they won't leave."**

50.   **Defendant President/CEO Deysher then in turn stated to defendant McIver, "We**
**need to get rid of this girl a.s.a.p.."**

51.   At this point **defendant Chief Financial Officer Colaianni stated, "I think we are**
**going to own this girl for some time until the suit clears. Then we can make the**
**move to fire her."**

52.   At the conclusion of the meeting, **defendant McIver stared plaintiff Mastalerz down**
**in an intimidating and hostile manner, turned to defendant National Sales Manager**
**Bond and stated, "I am very disappointed in you. I told you to fire her and you**

**didn't."** Then defendant McIver looked back over at plaintiff Mastalerz, stared at him for about 10 seconds in an intimidating manner, and stated, **"You cannot be trusted. I don't know how you will ever get that trust back. I cannot believe that this even happened, something that could have been avoided." Defendant McIver then stated to plaintiff Mastalerz, "This is my business, my family business. No little girl is going to ruin what my grandfather had built." Defendant McIver then directed plaintiff Mastalerz to make Yajaira Perez's life miserable.**

53.   **One other important matter that came up in this meeting was the fact that plaintiff Mastalerz was directed to fire Cliff Ansell at the same time he fired Yajaira Perez in order to cover up the retaliatory termination.**

54.   During the last week of October 2004, defendant National Sales Manager Bond advised plaintiff Mastalerz during a meeting that he was being removed from his position as National Service Manager. During the meeting, defendant National Sales Manager Bond assured plaintiff Mastalerz that he would not lose any pay or benefits, and that a newly created position [not yet in existence] would be a lateral move. Notwithstanding this assurance, on November 3, 2004, plaintiff Mastalerz was notified that he was being demoted and that his salary and benefits were being reduced significantly.

55.   Immediately upon receipt of this notification, plaintiff Mastalerz went directly into defendant National Sales Manager Bond's office to discuss the retaliatory demotion.

56.   The following day, on November 4, 2004, plaintiff Mastalerz met again with defendant National Sales Manager Bond regarding the demotion, which as discussed at the meeting was in direct retaliation because he hired a woman as a Service Engineer, because he opposed Methods' unlawful and discriminatory employment practices,

because he refused to continue to participate in the unlawful and discriminatory practices, and because he advocated on behalf of his female Service Engineer who had been subject to discriminatory treatment and sexual harassment by Methods' employees and supervisory officials.

57. During the meeting, plaintiff Mastalerz detailed his position regarding Methods' treatment of Yajaira Perez, and advocated on her behalf by stating among things, "We're treating her unfairly. She was the victim. What we're doing to her is against the law. Everything came down on me because my engineer didn't keep his mouth shut. You made me come down on her about her hair and clothes. All because of Methods' image."

58. Defendant National Sales Manager Bond's only response was, **"My rules, my show. If people don't get along with this, they should leave."**

59. On Monday morning November 29, 2004, plaintiff Mastalerz tendered his resignation because the work environment had become so hostile and intolerable that he had no reasonable alternative.

60. During a meeting with defendant President/CEO Deysher on November 29, 2004, plaintiff Mastalerz pointed out that he was "not treated fairly, by being demoted, because Yajaira Perez filed a sexual harassment case." Mr. Mastalerz also continued to oppose Methods' unlawful and discriminatory employment practices and to advocate on behalf of Yajaira Perez by expressing that he felt that "it was very unfair what Methods was doing to her. She's the victim; making it miserable for her. Jack (Gabrenas) should be fired." In response, defendant President/CEO Deysher stated that "Jack (Gabrenas) should only be punished to satisfy the quota."

61.   Subsequent to this meeting, on December 3, 2004, plaintiff Mastalerz was sent a notice of termination and was immediately removed from the health insurance plan without formal notification in violation of the law, leaving his family of five without any health benefits.

62.   Since that date, plaintiff Mastalerz has been advised by numerous people that Methods' supervisory officials have been disparaging him throughout the country---industry-wide, accusing him of criminal misconduct, and otherwise retaliating against him and interfering by threats, intimidation and coercion with his relationships with potential employers, distributors, and customers in the industry. As a direct result, plaintiff Mastalerz has suffered and continues to suffer damages and injuries.

63.   As a direct result of the illegal, discriminatory, hostile and retaliatory termination, plaintiff Mastalerz, suffered and continues to suffer severe emotional distress and mental anguish, public embarrassment, degradation and humiliation, loss of salary and benefits. Further, as a result of the unlawful termination, Mr. Mastalerz has had to endure extreme personal losses and hardships, which include but are not limited to, being forced to refinance his home. Further, his wife who is in nursing school was forced to seek additional work in order to pay basic family expenses.

## V.    CAUSES OF ACTION

### COUNT I:    VIOLATIONS OF TITLE VII -- 42 U.S.C. § 2000e-3 & M.G.L. CHAPTER 151B § 4(4)

64.    Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 63 of this Complaint, as though fully set forth herein.

65.    As a direct and proximate result of the actions of the defendants, plaintiff Mastalerz was subject to retaliatory treatment, adverse employment actions, a hostile work environment, and later terminated because he opposed and complained of the defendants' unlawful and discriminatory employment practices, because he refused to continue to participate in the unlawful and discriminatory practices, and because the plaintiff advocated on behalf of a female employee who had been subject to discriminatory treatment and sexual harassment by defendant Methods' employees and supervisory officials.

66.    The plaintiff is thereby entitled to damages and relief pursuant to Title VII -- 42 U.S.C. § 2000e-3 and M.G.L. Chapter 151B § 4(4).

### COUNT II:    VIOLATIONS OF TITLE VII -- 42 U.S.C. § 704(a)

67.    Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 63 of this Complaint, as though fully set forth herein.

68.    As a direct and proximate result of the actions of the defendants, plaintiff Mastalerz was subject to post-employment retaliation and adverse employment actions because he opposed and complained of the defendants' unlawful and discriminatory employment practices, because he refused to continue to participate in the unlawful and

discriminatory practices, because the plaintiff advocated on behalf of a female employee who had been subject to discriminatory treatment and sexual harassment by defendant Methods' employees and supervisory officials, and because the plaintiff filed a complaint with both the MCAD and EEOC subsequent to his termination.

69.    The plaintiff is thereby entitled to damages and relief pursuant to Title VII -- 42 U.S.C. § 704(a).

## COUNT III: *VIOLATIONS OF THE MASSACHUSETTS CIVIL RIGHTS ACT M.G.L. CHAPTER 12 §§ H-I*

70.    Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 63 of this Complaint, as though fully set forth herein.

71.    As a direct and proximate result of the actions of the defendants, plaintiff Mastalerz was subject to retaliatory treatment and later terminated because he opposed and complained of the defendants' unlawful and discriminatory employment practices, because he refused to continue to participate in the unlawful and discriminatory practices, and because the plaintiff advocated on behalf of a female employee who had been subject to discriminatory treatment and sexual harassment by defendant Methods' employees and supervisory officials.

72.    The defendants' retaliatory actions and conduct against plaintiff Mastalerz constitute the requisite "intimidation, threats or coercion" protected under the Massachusetts Civil Rights Act -- M.G.L. Chapter 12 § 11I.

73.    The plaintiff was deprived of his rights secured by the Massachusetts Constitution, and, as such, is entitled to damages and relief pursuant to M.G.L. Chapter 12 §§ 11 H-I.

## COUNT IV: *DEFAMATION*

74. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1 through 63 of this Complaint, as though fully set forth herein.

75. As a direct and proximate result of the defamatory acts of the defendants, plaintiff Mastalerz suffered and continues to suffer damages to his reputation throughout the country---industry-wide, thereby causing harm to his relationships with potential employers, distributors, and customers in the industry, and as a consequence causing the plaintiff emotional distress and suffering.

76. The plaintiff is thereby entitled to damages under the common law of defamation.

**WHEREFORE,** the plaintiff, Paul D. Mastalerz prays that this Court enter judgment on his behalf and:

1.   Award appropriate compensatory damages to plaintiff Paul D. Mastalerz from the defendants jointly and severally in an amount to be determined by the court.

2.   Award punitive damages to plaintiff Paul D. Mastalerz from defendants Scott McIver, Bryon G. Deysher, Steven Bond, and Carol Colaianni.

3.   Award the plaintiff costs, interest and attorneys' fees.

4.   Award such other relief as this Court deems just, equitable and appropriate.

## *THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL*

DATED:      July 22, 2005

Respectfully submitted,
The Plaintiff
By His Attorneys,

Joan A. Antonino
BBO#547319

Charles J. DiMare
BBO#124820
ANTONINO & DIMARE
Post Office Box 3333
Amherst, MA 01004-3333
(413) 549-5330

21

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided b - local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil cock t sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

Paul D. Mastalerz

**DEFENDANTS**

Methods Machine Tools, Inc.
Scott McIver,
Bryan G. Deysher,
Steven Bond,
Carol Colaianni

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Hampshire
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Middlesex
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

05 - 30171 - KPN

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Federal Bar No.  547319; 124820
Joan A. Antonino, Charles J. DiMare
Antonino + DiMare
Box 3333
Amherst, MA 01004     413- 549- 5330

ATTORNEYS (IF KNOWN)
Federal Bar No.

**II. BASIS OF JURISDICTION** (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Title 42 USC § 2000e -3
42 USC § 704(a)

Cause of Action: Title VII
MGL ch. 151B
MGL ch. 12 §11 H+I
Defamation

**V. NATURE OF SUIT** (PLACE AN × IN ONE BOX ONLY)

[nature of suit checkboxes — 441 Voting, 442 Employment area marked]
☑ 442 Employment

**VI. ORIGIN** (PLACE AN × IN ONE BOX ONLY)
☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23   DEMAND $   Check YES only if demanded in complaint
JURY DEMAND: ☑ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 7-22-05   SIGNATURE OF ATTORNEY OF RECORD  Joan A. Antonino

UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _____
   _Paul D. Mastalerz    v.    Methods Machine Tools, Inc._

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   **05 - 30171 - KPN**

   - [ ] I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   - [✓] II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         for patent, trademark or copyright cases

   - [ ] III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

   - [ ] IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

   - [ ] V.    150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                              YES ____    NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)
                                                              YES ____    (NO)
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                              YES ____    (NO)

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                              YES ____    (NO)

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
                                                              YES ____    NO [✓]

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [✓]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
                                                              YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    _Joan A. Antonino / Charles J. DiMare_
ADDRESS           _P. O. Box 3333 Amherst MA 01004_
TELEPHONE NO.     _413 549 - 5330_

(CategoryForm.wpd - 5/2/05)